# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL BURRELL KIPP,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No. 1:13-cv-01772-SAB<br><br>ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL |

Plaintiff Michael Burrell Kipp ("Plaintiff") filed this action seeking judicial review of the final decision of Defendant Commissioner of Social Security ("Defendant" or "Commissioner") denying Plaintiff's application for benefits under the Social Security Act. (ECF No. 1.) All parties have consented to the jurisdiction of a United States Magistrate Judge for all purposes. (ECF Nos. 7, 8.)

Plaintiff applied for Social Security benefits due to impairments related to a brain injury, a non-verbal learning disorder, an autistic spectrum disorder, an attention deficient hyperactivity disorder, and Asperger's Syndrome. For the reasons set forth below, Plaintiff's appeal from the final decision of the Commissioner is denied.

/ / /

/ / /

/ / /

# I.

# FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff applied for Supplemental Security Income benefits on January 20, 2010. (AR 189.) Plaintiff's application was denied on June 15, 2010. (AR 74.) Plaintiff requested reconsideration of the denial on August 21, 2010. (AR 80.)

On November 11, 2010, Plaintiff requested a hearing. (AR 84.) On April 4, 2012, a hearing took place before Administrative Law Judge Robert Lowenstein ("the ALJ"). (AR 27.) On April 17, 2012, the ALJ issued a written decision and found that Plaintiff was not disabled. (AR 7-21.) The Appeals Council denied Plaintiff's request for review on September 10, 2013. (AR 1.)

### A.     Plaintiff's Hearing Testimony

Plaintiff testified that he was born on April 18, 1991. (AR 32.) Plaintiff has twelve years of schooling. (AR 32.) Plaintiff is 5'11" and weighs about 200 pounds. (AR 32.) Plaintiff lives in a single story house with his parents and brother. (AR 33.) Plaintiff's hobbies include cars, video games, electronics, and reading. (AR 34.)

Plaintiff testified that he sees a doctor and psychiatrist. (AR 34-35.) Plaintiff sees a doctor every three to six months. (AR 35.) Plaintiff has seen a psychiatrist once, with a second visit scheduled the same week as the hearing with the ALJ. (AR 35.) Plaintiff takes Buspirone and Risperidone. (AR 36.)

Plaintiff testified that he is unable to stay focused. (AR 36.) Plaintiff gets tired easily. (AR 36.) Plaintiff testified that he moves and works slower than most people. (AR 36.)

Plaintiff testified that he participated in a work ability program and tried to work at a Dollar Tree for six hours, but he was unable to complete the shift. (AR 37.)

Plaintiff goes to bed at around 10:00 or 11:00 at night. (AR 38.)

Plaintiff is knowledgeable about cars and reads car magazines. (AR 38.) Plaintiff plays video games, such as racing games and real time strategy games. (AR 38.) Plaintiff plays for

---

[1] Citations to the Social Security Administrative Transcript will be designated as "AR" (administrative record). Page numbers will refer to the page numbers as stamped and indexed in the lodged transcript. (See ECF No. 9.)

1 several hours, but takes breaks every once in a while.  (AR 38-39.)  Plaintiff likes to tinker with
2 electronics.  (AR 39.)  Plaintiff took apart a broken video game system to see what was inside it,
3 but could not repair it.  (AR 39.)  Plaintiff also spends about 30 minutes to an hour reading
4 science fiction, comic books, and magazines.  (AR 39.)

5 Plaintiff testified that he cannot work for long periods of time because he loses focus.
6 (AR 40.)  Plaintiff last tried working six hours a few years before the hearing, and tried working
7 for less than a week.  (AR 40.)  Plaintiff also reported losing focus while reading, playing games,
8 and taking apart electronics.  (AR 40.)  Plaintiff also reported having difficulty in school.  (AR
9 40-41.)

10 Plaintiff is able to dress himself, shower, cook, simple things, and shop.  (AR 41-42.)
11 Plaintiff stated that he does not do dishes often because it is hard for him to stay focused.  (AR
12 42.)  Plaintiff does his own laundry, makes his bed, vacuums, takes out the garbage, and mows
13 the lawn.  (AR 42.)

14 On a school day, Plaintiff gets ready for school, goes to the bus stop, and rides the bus to
15 school for a math class at Fresno City College.  (AR 43.)  Plaintiff then hangs out with his
16 friends until his second class starts around 5:00 p.m.  (AR 43-44.)  Plaintiff's second class is
17 training for teaching assistants in special education.  (AR 44.)  While in the Work Ability
18 program, Plaintiff also helped students for an hour or two by pushing wheelchairs and
19 supervising.  (AR 45.)

20 When Plaintiff was in high school, he received special accommodations, such as an aide,
21 calculator, note taker, and longer time to take tests.  (AR 49.)  Plaintiff took special education
22 classes in high school.  (AR 49.)  Plaintiff is no in the disabled students program at Fresno City
23 College.  (AR 50.)  Plaintiff is late to school about half the week because it is hard to get to bed
24 on time.  (AR 50-51.)  Plaintiff also is slow to get dressed because he wakes up groggy from
25 tiredness and from side effects from his medication.  (AR 52.)  Plaintiff takes about 20-30
26 minutes to get ready for school.  (AR 52.)

27 Plaintiff has recently been treated for depression.  (AR 56.)  Plaintiff has had depression
28 for 2-4 years.  (AR 56.)

**B.     VE Testimony**

Thomas Dachelet testified as a vocational expert ("the VE") at the hearing on April 4, 2012.  (AR 57.)  The VE testified that Plaintiff has no past relevant work.  (AR 58.)

The ALJ provided the VE with the following first set of hypothetical limitations:

- No exertional limitations; and
- Limited to simple, routine and repetitive tasks.

(AR 58.)  The VE testified that someone with such limitations could work jobs ranging from sedentary work to heavy work.  (AR 58.)  Specifically, the VE identified poultry worker (DOT 525.687-010), packager, hand (DOT 920.587-134), and packing line worker (DOT 753.687-038).  (AR 58-59.)

The ALJ provided the VE with the following second set of hypothetical limitations:

- Same limitations as first hypothetical; and
- Cannot fully realize or demonstrate skills and working characteristics or behavior conducive to maintaining or increasing work rate pace or production demand on a consistent basis.

(AR 60.)  The VE testified that a person would such limitations could not work competitively.  (AR 60.)

The ALJ then provided a third hypothetical, where the person would be off task 39 percent of the time.  (AR 60.)  It is unclear from the transcript whether the third hypothetical incorporated the limitations expressed in the first or the second hypotheticals.  The VE testified that a person with such limitations could not work.  (AR 60.)

The ALJ provided a fourth hypothetical, where the person could not sustain sufficient concentration, persistence, or pace to do simple, routine tasks on a regular and continuing basis.  (AR 60.)  Again, it is unclear from the transcript whether the fourth hypothetical incorporated any of the limitations expressed in the prior hypotheticals.  The VE testified that a person with such limitations could not work.  (AR 60.)

/ / /

/ / /

4

**C.     Medical Records**

The administrative record includes the following medical records: a July 1998 neuropsychological evaluation from Dr. Paul C. Lebby, Ph.D at Valley Children's Hospital (AR 362-378), other records from Valley Children's Hospital (AR 379-381), an April 2008 student assessment report from the California Department of Education (AR 382-410), records from Fresno Unified School District (AR 411-456, 460-539), other records from Fresno Children's Medical Group (AR 457-459), records from Dr. Roger Gong, M.D. (AR 540-546), an April 19, 2010 psychiatric review technique from Dr. A. Garcia, M.D. (AR 547-557), an April 19, 2010 mental residual functional capacity assessment from Dr. A. Garcia, M.D. (AR 558-560), a May 20, 2010 psychological evaluation from Dr. James P. Murphy, Ph.D (AR 561-566), a June 9, 2010 case analysis from Dr. A. Garcia, M.D. (AR 567-569), other records from LQMG Medial Group (AR 570-579), other records from Robert D. Wells & Association (AR 580-602), and other records from Children's Hospital of Central California (AR 603-632).  The medical records will be discussed in more detail below if pertinent to the Court's analysis.

**D.     The ALJ's Findings**

The ALJ made the following findings of fact and conclusions of law:

- Plaintiff has not engaged in substantial gainful activity since January 20, 2010, the application date;
- Plaintiff has the following severe impairments: a brain injury, a non-verbal learning disorder, an autistic spectrum disorder, an attention deficient hyperactivity disorder, and Asperger's Syndrome;
- Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: Plaintiff has the mental residual functional capacity to perform simple routine tasks;
- Plaintiff has no past relevant work;
- Plaintiff was born on April 18, 1991 and was 18 years old, which is defined as a younger individual age 18-49, on the date the application was filed;
- Plaintiff has at least a high school education and is able to communicate in English;

- Transferability of job skills is not an issue because Plaintiff does not have past relevant work;
- Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform;
- Plaintiff has not been under a disability, as defined in the Social Security Act, since January 20, 2010, the date the application was filed.

(AR 12-21.)

## II.

## LEGAL STANDARDS FOR JUDICIAL REVIEW OF SOCIAL SECURITY DETERMINATIONS

An individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). The Court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.")

///

///

# III.

# DISCUSSION AND ANALYSIS

Plaintiff argues that the ALJ erred by failing to consider whether Plaintiff's impairments effectively meets or equals the Listing 12.05.

"Disability claims are evaluated using a five-step sequential analysis." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 20 C.F.R. § 404.1520). Whether Plaintiff's impairments meets or equals a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1 is analyzed at step three. Id. If Plaintiff meets or equals a listed impairment, the Plaintiff is automatically presumed disabled. Id.

Plaintiff argues that his impairments medically equal Listing 12.05C. Listing 12.05C states:

> 12.05 Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> ....
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

20 C.F.R. Pt. 404, Subpart P, Appendix 1, Listing § 12.05.

## A.    Waiver

As an initial matter, Defendant argues that Plaintiff waived any argument that he meets or equals Listing 12.05 because Plaintiff raises the issue for the first time in this appeal. "[A]t least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal.... We will only excuse a failure to comply with this rule when necessary to avoid a manifest injustice...." Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999). On the other hand, when an issue which is a pure question of law is raised for the first time on appeal and the Commissioner would not be unfairly prejudiced by the claimant's failure to raise the issue at the administrative level, the Court will consider such arguments. See Silveira v. Apfel, 204 F.3d 1257, 1260 n.8 (9th Cir. 2000).

1    The Court notes that, at the hearing, Plaintiff's attorney did make a general argument that Plaintiff's impairments meet one of the listings, though Plaintiff's attorney did not cite any specific listing.[2] (AR 32.) Moreover, the ALJ's written decision analyzes the issue of whether Plaintiff's impairments meets the listing for 12.05C.[3] (AR 13.) Accordingly, this is not a clear case of waiver. Moreover, even assuming for sake of argument that Plaintiff did not raise the issue at the administrative level, this appears to be the type of "pure question of law" that the Court is permitted to consider for the first time on appeal, as Plaintiff is not relying on new evidence and there is no dispute between the parties regarding the evidence as both parties rely on the same IQ test scores. Accordingly, the Court will consider Plaintiff's arguments on appeal.

### B.  Plaintiff's IQ Scores

To meet Listing 12.05C, Plaintiff must possess "[a] valid verbal, performance, or full scale IQ of 60 through 70...." 20 C.F.R. Pt. 404, Subpart P, Appendix 1, Listing § 12.05C. Plaintiff argues that the record shows that he received an IQ score of 65 in on two occasions. (Pl.'s Opening Brief 10:7-11.)

The record cited by Plaintiff is from a psychological evaluation dated May 20, 2010 and signed by Dr. James P. Murphy, Ph.D. (AR 561-566.) The evaluation contains a section discussing Plaintiff's scores on the Wechsler Adult Intelligence Scale, IV Edition, with the following table:

| WAIS IV | Scaled Score | Composite Score | % Rank |
|---|---|---|---|
| Verbal Comprehension | 31 | 102(Average) | 55 |

---

[2] At the beginning of the hearing, the ALJ and Plaintiff's attorney had the following exchange:

> ALJ:  And you're contending a listing as met?
> ATTY:  Indeed.

(AR 32.)

[3] The ALJ wrote:

> Finally, the "paragraph C" criteria of listing 12.05 are not met because the claimant does not have a valid, verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

(AR 13.)

| Perceptual Reasoning | 16 | 73(Borderline) | 4 |
| Working Memory | 12 | 77(Borderline) | 6 |
| Processing Speed | 6 | 62(BIF) | 1 |
| Full Scale Intelligence | 65 | 76(Borderline) | 5 |

(AR 564.)

The record also indicates that, on October 12, 2005, Plaintiff took the "WISC IV" test and received an "FSIQ" of 65. (AR 414.) However, this score is no longer considered "current" under Social Security regulations:

> IQ test results must also be sufficiently current for accurate assessment under 112.05. Generally, the results of IQ tests tend to stabilize by the age of 16. Therefore, IQ test results obtained at age 16 or older should be viewed as a valid indication of the child's current status, provided they are compatible with the child's current behavior. IQ test results obtained between ages 7 and 16 should be considered current for 4 years when the tested IQ is less than 40, and for 2 years when the IQ is 40 or above. IQ test results obtained before age 7 are current for 2 years if the tested IQ is less than 40 and 1 year if at 40 or above.

20 C.F.R. Pt. 404, Subpart P, Appendix 1; see also Gonzalez v. Colvin, No. 1:12-cv-00104-JLT, 2013 WL 1785981, at *8 (E.D. Cal. Apr. 25, 2013). Plaintiff's 2005 score, taken when Plaintiff was approximately 14 years old, is not current enough to represent Plaintiff's current level of IQ under the Social Security regulations.

Defendant argues that the scores cited by Plaintiff are his "scaled scores" whereas the scores that should be looked at are the "composite scores." The May 20, 2010 evaluation from Dr. Murphy indicates that Plaintiff's "Full Scale Intelligence" "Scaled Score" is 65, whereas his "Composite Score" is 76. (AR 564.)

The Social Security regulations do not provide much insight regarding the difference between "scaled scores" and "composite scores." However, the regulations state:

> The IQ scores in 12.05 reflect values from tests of general intelligence that have a mean of 100 and a standard deviation of 15; e.g., the Wechsler series. IQs obtained from standardized tests that deviate from a mean of 100 and a standard deviation of 15 require conversion to a percentile rank so that we can determine the actual degree of limitation reflected by the IQ scores. In cases

> where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05.

20 C.F.R. Pt. 404, Subpart P, Appendix 1.

This description appears to rule out the scores listed under the "Scaled Score" column of Dr. Murphy's psychological evaluation, as these scores do not appear to be based upon a scale with a mean of 100 and a standard deviation of 15.[4] On the other hand, the scores listed under the "Composite Score" column appear to follow the appropriate scale, though it is worth noting that there is nothing in the record which definitively confirms this interpretation for the Court.

Adding further to the confusion, Listing 12.05C states Plaintiff must possess a valid <u>verbal</u>, <u>performance</u>, or <u>full scale</u> IQ of 60 through 70. 20 C.F.R. Pt. 404, Subpart P, Appendix 1, Listing § 12.05C (emphasis added). Dr. Murphy's psychological evaluation makes no reference to any "verbal" or "performance" scores, though it does list scores for "Verbal Comprehension," "Perceptual Reasoning," "Working Memory," and "Processing Speed." (See AR 564.) Again, the Court is without any guidance as to how these different categories of scores correlate or translate to one or the other. Plaintiff's 62 "Composite Score" for "Processing Speed" falls within the 60-70 range set forth in Listing 12.05C, but nothing in the record or in Plaintiff's briefing suggests that a "Processing Speed" score is equivalent to the "verbal," "performance," or "full scale" score set forth in Listing 12.05C. Thus, the Court is left with Plaintiff's "Full Scale Intelligence" composite score of 76, which supports the ALJ's conclusion that Plaintiff did not meet the 60 to 70 IQ score range required by Listing 12.05C. Since the record contains no indication that a "Processing Speed" score of 62 satisfies the first prong of Listing 12.05C, the Court finds that the ALJ's finding that Plaintiff did not meet Listing 12.05C is supported by substantial evidence.

Since the Court finds that Plaintiff's IQ scores disqualify him from meeting Listing 12.05C, the Court declines to address Plaintiff's remaining arguments regarding Listing 12.05C.

---

[4] This is most clearly demonstrated by the fact that Plaintiff's Verbal Comprehension "Scaled Score" of 31 translated to a score in the 55th percentile.

IV.

**CONCLUSION AND ORDER**

Based upon the foregoing, the Court finds that the ALJ's decision was supported by substantial evidence.

Accordingly, it is HEREBY ORDERED that:

1. Plaintiff's appeal from the administrative decision of the Commissioner is DENIED;
2. JUDGMENT is entered in favor of Defendant Commissioner of Social Security and against Plaintiff Michael Burrell Kipp; and
3. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:   **October 1, 2014**

UNITED STATES MAGISTRATE JUDGE